Mills Olcott,
Administrator of Timothy Olcott,
*against*
Samuel Morey.

If the administrator upon an estate represented insolvent brings an action, the defendant shall not be estopped from pleading counter demands in set-off, because he has exhibited those demands before the commissioners, whether such demands have been allowed or *disallowed* by them.

PLAINTIFF declared in case for several sums due to the intestate in his life-time.

First count. General *indebitatus assumpsit* in the sum of 2,000 dollars, for goods, wares and merchandise sold and delivered.

Second count. 200 dollars, money laid out and expended.

Third count. 2,000 dollars, money had and received.

To these counts general issue was pleaded and joined.

Defendant then pleaded as a set-off, several sums, by eight counts in his declaration.

First count. For 40*l.* lawful money, due on liquidated account, *July* 18th, 1791.

Second count. General *indebitatus assumpsit* for 720 dols. 60 cts. money laid out and expended.

Third count. *Quantum meruit* for work, labour and service done, same sum.

Fourth count. On promissory note payable on demand, dated 4th *January*, 1793, for 500*l.* lawful money.

The fifth and sixth counts, for two other notes of the same tenor and date.

Seventh count. On promissory note, dated 24th of *March*, 1794, payable sixty days after date, for 660 dollars.

Eighth count. On a receipt dated 1st *April*, 1792, in which the intestate acknowledged the receipt of several deeds of land, conveying as follows, to wit:

One proprietary right of land in the town of *Lewis.*

Nine rights of land in the town of *Lincoln.*

One ditto in the town of *Orange.*

One ditto in *Peacham.*

And 1,200 acres of land in *Fairlee*, and which he was to dispose of and account for in partnership, or return said deeds; *innuendo*, meaning that said *Timothy* should dispose of said lands in reasonable time,

Olcott
v.
Morcy.

and account and pay to the said *Samuel Morcy* one half of the avails thereof, or return said deeds to said *Samuel* on demand. Then an averment that the intestate had disposed of said lands for the amount of 6,000 dollars, and ought to have paid one moiety, &c.

To these several counts in offset the general issue was tendered and joined.

And the administrator, according to the form, force and effect of the statute in such case made and provided, hereby gives notice to the adverse party, that under the above issue he shall rely on and give in evidence the following special matters, to wit :

That on the 18th day of *July*, 1796, the estate of the said *Timothy Olcott* (there not being sufficient estate to pay the just debts due) was, agreeably to the statute in such case made and provided, by the administrator represented as *insolvent* to *William Perry*, Esquire, Judge of the probate of wills for the District of *Hartford;* and on the same day last aforesaid the said Judge did appoint *Paul Brigham, Ebenezer Judd* and *Ebenezer Brown*, Esquires, commissioners to examine into the claims of the creditors to the said estate, and did then and there issue to the said commissioners a commission of that date, authorising the said *Brigham, Judd* and *Brown* to examine into the claims against said estate, and to make return of their doings thereon, in nine months from the said 18th day of *July ;* and the said *Paul Brigham* and *Ebenezer Brown*, two of the said commissioners above named, having been duly sworn to the true and faithful performance of their trust, did proceed to appoint times and places to sit and examine into the claims against

said estate; and did publish the same agreeably to the act in such case made and provided: and the said *Brigham* and *Brown*, commissioners as aforesaid, did, at the several times and places by them appointed, proceed to examine into the claims against said estate, and did allow such claims on the same to the amount of 3,472*l.* 14*s.* 5*d.* lawful money ; and on the 17th day of *April*, 1797, the said *Brigham* and *Brown*, commissioners as aforesaid, did make their return and report to said Judge of probate, stating the said several claims and the amount to the sum aforesaid, and the said return and report was then and there accepted by said Judge of probate, and a record thereof in his probate-office made according to law : and the said *William Perry*, Judge of the probate of wills as aforesaid, on the said 18th day of *July*, at the request of the said administrator, did also appoint the said *Brigham*, *Judd*, and *Brown*, being judicious and disinterested freeholders, appraisers to appraise the estate of the said *Timothy Olcott*, and to make an inventory thereof, and to make return of their doings thereon by the 1st day of *October* then next: and afterwards, on the 9th day of *November*, 1796, the time for the making said appraisal and inventory was extended to the 1st day of *January* then next; and the said administrator did, between the said 18th day of *July* and the said 1st day of *January*, by them the said *Paul Brigham* and *Ebenezer Brown*, two of the appraisers aforesaid, duly sworn according to law, cause a true and perfect inventory of all the estate both real and personal of the intestate, which came within his knowledge to be made ; and the said appraisers did inventory and appraise the said estate at the sum of

26

Olcott
v.
Morey.

1,106*l*. 3*s*. 2*d*. lawful money, an attested copy of which said appraisal and inventory were, on the 6th day of *December*, in the year of our Lord 1796, returned to said Judge of probate, by him accepted, and in his office recorded; and a like attested copy now remains with the said administrator; all which proceedings of the said Court of Probate, by the records thereof, here ready in Court to be shewn, may more fully appear; whereby said estate appears to have been and to *be insolvent*, and not sufficient for the payment of the just claims so allowed by said commissioners. And the administrator further says, that the said estate is not now so far settled and adjusted, as that it can be determined what dividend can be made for the satisfaction in part of the claims so by said commissioners allowed, nor hath the said Judge of probate made any decree or order directing the said administrator to pay the debts due from said estate, or any proportion thereof.

Signed by the plaintiff's attorney.

The cause now went to the Jury. Exception was taken by the defendant's counsel to the subject matter of the notice being proved to the Jury. After some argument, from an intimation by the Court, the parties entered the following agreement on the record :

It is agreed between the parties, that the verdict of the Jury shall be taken under a reserved case, of which the above notice shall be considered as part. And further,

That one promissory note given by the intestate to the said *Samuel Morey*, dated 4th of *February*, 1793, for the sum of 500*l*. lawful money, with interest pay-

able on demand, the whole contents 625*l.* which has been *allowed* by said commissioners.

Also one other note given by the intestate as afore-said, dated *March* 24th, 1794, for 660 dollars, with interest payable in two months after date, the whole contents 790 dols. 97 cts. allowed by said commissioners, and a receipt for nine rights of land in *Lincoln,* valued by agreement at ten pounds each, one right in *Lewis* at twelve pounds, one in *Peacham* at thirty pounds, with four years interest on the whole, allowed by the said commissioners.

And the two following promissory notes, given by the intestate to the said *Morey*, and *disallowed* by the said commissioners, to wit, a promissory note, dated *February* 4th, 1793, for the sum of 500*l.* lawful money, with interest, payable the 1st of *January*, 1794, and another promissory note for the same sum and of equal date, payable the 1st *January*, 1795, should be given in evidence to the Jury, and that a verdict shall be taken in said cause, subject to the order and deci-sion of the Court, on the law arising from the above case and facts.

Signed by the counsel for each party.

The Jury found a verdict for the defendant *Morey,* to recover of the plaintiff, in his capacity of adminis-trator, the sum of 7,695 dols. 97 cts. being the sum that the intestate was in arrear to the defendant.

And now, at the after sittings of the same term, the reserved case was argued and decided.

There were two points made which were argued in the nature of a demurrer to the evidence advanced in support of the counts in the set-off:

Olcott
v.
Morey.

First. Whether a claim exhibited before the com-missioners, on an estate represented insolvent, and *allowed* by them, can be afterwards counted upon in offset to an action commenced by administrator for the recovery of a claim in favour of the estate.

Secondly, which was the principal point, whether a claim exhibited as aforesaid to the commissioners, and by them *disallowed*, can be afterwards counted upon in such offset.

*Vermont* Stat. vol. 1. p. 152, 153, 154, 155, 156, 157.

The counsel for the plaintiff read the following sec-tions from the act for the probate of wills, and settle-ment of testate and intestate estates, passed *March* 10th, 1797 :* sections 82, 83, 84, 85, 86. with pro-viso, and sections 88, 89. and from these sections they contended, that when an estate of an intestate was by the administrator represented as insolvent to the Judge of probate, and he had appointed commis-sioners to receive, examine and adjust the claims of creditors. Whilst the right to prosecute for the re-covery of the debts due to the estate remained in the administrator, the usual process in the common law

---

* No question appears to have been made, whether the act passed *March* 8th, 1787, operated in this case. This act was repealed by a general repealing act, passed *November* 10th, 1797, and went into effect the 1st *September*, 1798, and in sec-tion 3. enacts, " That the aforesaid repealed acts or laws shall be in full force as to all matters and things done or transacted during their existence, to which they relate to all intents and purposes as though this act had not been passed." But it may be questioned whether a recurrence to this act would have va-ried the decision.

courts was suspended as to the creditors; for that section 86. declares, " that no action against any executor or administrator of any *insolvent estate* shall be sustained except for debts due to the State, debts due for rates or taxes, last sickness and funeral charges; unless the executor or administrator, having objection to the claim on which the action is brought, consents to have the same settled by course of law."

Section 89. " That all actions brought against any executor or administrator, before any estate is represented insolvent, shall, when such estate is found to be insolvent, be discontinued, unless the executor or administrator consent to have a trial at law, as before directed in this act."

That though the rights of the creditor are diverted to another channel, yet they are not abridged; for section 84. provides, " That if any creditor shall exhibit his claim or demand against such estate so represented as aforesaid to the commissioners as before mentioned, and the said commissioners shall disallow it wholly or in part; such creditor conceiving himself aggrieved by the judgment and determination of the commissioners, may, at the time such commissioners shall make report and return to the Judge as before mentioned, or within twenty days afterwards, if such demand so disallowed, in the whole amounted to twenty dollars, or if the sum allowed by the commissioners of any demand exhibited be twenty dollars less than the sum demanded, *appeal* from the judgment and determination of the commissioners to the Supreme Court next to be holden in the same County, whether the same be a stated or adjourned session of said Court, signifying to the Judge in writing such

his desire, and filing in the probate office a declaration of his demand against such estate, drawn up with the same legal certainty as is required in prosecuting demands in the courts of law. And the Judge shall cause the executor or administrator to be served with a copy of such declaration, and of the appeal made by such creditor, at least twelve days before the sitting of such Court, if there shall be so many days between the time of filing such declaration, and the time of the session of such Court, and if there shall not be so long a time, then the copy aforesaid shall be served as soon as may be, and the creditor may, at the Court to which the appeal is made, on the first day of the sitting of said Court, enter his action as plaintiff against the executor or administrator, and shall produce an attested copy of such his declaration, and a certificate from the Judge of probate that notice hath issued to the executor or administrator thereon; and upon such declaration such pleadings may be had and the matter issued in the same way and manner as though such action had been commenced in the ordinary and usual way, and had been entered in said Supreme Court by way of appeal from the County Court."

Here the creditor's right to the opinion of this Court is secured, and his right to trial by Jury is not taken away. To shew the intention of the Legislature still further, the same section provides, " that the Supreme Court shall certify to the Judge of probate the judgment they shall give thereon."

This Court is to issue no execution on the judgment, except for costs; but the judgment is to be considered only as rectifying or affirming the pro-

ceedings of the commissioners under the Probate Court. Every thing relative to the claims of creditors to an insolvent estate, is to be kept distinctly within the process of the Probate Court.

Further, in the proviso to the 86th section, an action is expressly given to the creditor against the administrator for the proportion of the insolvent estate to which he is entitled by the report of the commissioners after the expiration of a certain time allowed by the Judge of probate; and the result of the judgment in favour of the creditor is to be an execution *de bonis propriis*, and this is the only action contemplated by the statute for the creditor to have.

From whence they inferred, that the creditor could not bring his claims against an insolvent estate, though allowed by the commissioners, into this Court in the usual course of process, or, as the statute expresses it, " by course of law."

But if they were incorrect in this view of the statute upon the *second point* made on the case reserved, the statute provisions will be too plain to admit of doubt.

The creditor is not only estopped from exhibiting in set-off such claims as were disallowed by the commissioners, but by a clause in the 84th section, " if the creditor shall fail to enter his action in manner and season as before directed, his demands shall be for ever barred."

To shew further the intention of the Legislature to keep the creditor to an insolvent estate strictly within the probate process, they read the 83d section, " That all demands against any estate represented insolvent as aforesaid, not exhibited to the commissioners

Olcott
v.
Morey.

within the time limited by the Judge for that purpose, shall be for ever barred; unless the creditor or creditors can find some estate of the deceased not inventoried or accounted for by the executor or administrator; in which case, after allowing and deducting such costs and charges as to the Judge may appear reasonable, if the estate so found be sufficient, the said creditor or creditors shall first receive a dividend so as to make him, her, or them equal to the other creditors of said estate, if there be so much remaining after deducting costs as aforesaid, and the overplus (if any there be) shall be divided in due proportion among all the several creditors to said estate."

They contended further, that the declaration in set-off is to all intents a new action, contrived merely to avoid the expense and delay of mesne process. That anciently opposite claims, which could not be pleaded under the same action, were pursued by several process to distinct judgment, and the party who recovered the first judgment was allowed to plead it against the less vigilant party. This was effected partly by the common law practice, but principally by the regulations of successive statutes. But the statute declaration of set-off, styled rather awkwardly in our code, offset, has all the properties and every defence which can be made to a new and independent action, attaches to this declaration. The party declaring in offset is therefore estopped from saying, this is my defence to the plaintiff's action, and thus to elude those wholesome restrictions of the law which would have barred his right of action if he had commenced in a distinct and separate suit. The de-

claration in offset does not become a defence, until the Jury have found the *issue* in favour of the offset, and ascertained the damages. Then the Jury, by virtue of the power vested in them by the statute, apply these damages *in defence* against the demands of the plaintiff. But while the declaration in offset is *in transitu*, it is subject to all the rules of pleading, controlled by all restrictions of practice, and limited by all the common law and statute bars, as effectually as if the declaration had stood on the files as pertaining to an original suit.

The counsel for the defendant replied, that conceding that upon an intestate estate being represented insolvent, that the statute had diverted the prosecution for the recovery of claims of creditors from the common law channel, and that all suits depending in the Courts of law were to be discontinued; yet a right was reserved to the administrator to litigate any claim in the usual course of juridical practice, when in the words of the statute, " *he consents to have the same settled by course of law.*" By the impetration of this writ the administrator has elected to have this creditor's claim settled by course of law. It would be a monstrous doctrine to conclude, that the administrator, by force of the probate act, might prosecute and recover the claims of his intestate *by course of law,* and the debtor be estopped from his defence. The power of the commissioners is not merely to receive and examine, but to *adjust* the claims of creditors. The term *adjust* implies a power in the commissioners, to examine *counter claims*, and to adjust the balance between the estate and the creditor. A case might

27

Olcott
v.
Morey.

be put, perhaps this very case, where the creditor may have exhibited his claim, the administrator may have exhibited a counter claim on the part of the estate represented insolvent: the commissioners may have docked both, or allowed the amount of each, and finding the balance equal, may on this account have disallowed the claim of the creditor; and the parties finding there was nothing due to either, neither would have any inducement to appeal. But should the administrator afterwards institute a suit on his claim, on trial shall he be permitted to say to the creditor, You have had your day in the commissioners' court; your claim has been disallowed by them; you waived your right of appeal; you are now therefore precluded from pleading your claim (however honest, and though esteemed such by the commissioners) in offset against mine? The statute certainly is not pregnant with such absurdity.

This will apply likewise to the general bar in section 83. A creditor may be convinced that his claim is balanced by a claim on the part of the insolvent estate. He therefore omits to exhibit his claim to the commissioners. If afterwards administrator commences a suit against him, shall he be precluded from pleading his own claim in defence? Shall he not shew that he did not owe the intestate any thing?

The declaration in offset is not in the nature of a separate independent action, but by force of the statute is incorporated into the action to which it is pleaded. The statute provides, " that if the plaintiff, in any action pending before any Court on bond, bill, note, or other contract, shall be indebted to the de-

<div style="margin-left:2em;font-style:italic;">Vermont Stat.<br>vol. 1. p. 92.</div>

fendant in such action ; the defendant, after pleading
the general issue, or confessing the plaintiff's cause
of action, may plead an offset of any sum or sums
due to him from the plaintiff as aforesaid, which plea
shall be in the nature of a declaration, with one or
more counts as the nature of the case may require ;
and if the plaintiff shall plead the general issue to any
or all the counts in the defendant's plea, or shall con-
fess the cause of action contained in any or all the
counts in the defendant's plea, he may in like man-
ner plead in offset any sum or sums due to him from
the defendant as aforesaid ; and the issue and plead-
ings being closed, the Jury shall be directed to find
generally such sum or sums as shall be found in ar-
rear from either, and judgment shall be rendered
thereon accordingly."

Here the statute declares, that defendant may *plead*
in offset, that is, plead in defence to the plaintiff's de-
claration, which he has either traversed or confessed,
which plea shall be *in the nature* of a declaration, not
a new declaration independent of the declaration to
which it is pleaded ; and though the plea is in the na-
ture of a declaration, and there may be said to be the
semblance of a second declaration in the cause, and
several issues may be put to the same Jury, yet they
all, by force of the statute, converge into one issue,
resolving into such sum as shall be found in arrear to
either party. The defendant is therefore entitled to
all those legal advantages which would accrue to him
from any other mode of defence.

Provision also appears to be made by the statute
for the plaintiff in his turn to plead in offset. This

Olcott
v.
Morey.

declaration, according to the doctrine contended for, would be a separate action, and here we should have three independent actions embraced in one record. This is too absurd.

The Chief Judge delivered the opinion of the Court.

The Court see no distinction in the present case between claims *allowed* or *disallowed* by the commissioners.

If the administrator elects to institute a suit upon claims in favour of an insolvent estate, the adverse party must not be estopped from such legal defence as would have been available in case the commission of insolvency had not issued. Even the general bar, in case where the creditor failed to exhibit his claim to the commissioners, could only be pleaded to an action instituted by the creditor, and could not be taken advantage of by the administrator under the general issue in offset to the exclusion of the defendant's defence.

The Court consider a declaration in set-off, not as a distinct action, but merely a statute provision made in aid of the rules of practice, which might not allow the subject matter of it to be shewn in evidence under the ordinary issue to the plaintiff's declaration, consistently with the technie of pleading and prac-tice. It is in its nature the party's defence, of which the Court will not suffer him to be deprived.

SMITH, Judge. Though I am in opinion with the Chief Justice in supporting the verdict, yet I am ra-

ther inclined to consider, that the exhibition of his claim to the commissioners of an insolvent estate is necessary to the taking the creditor out of the bar in the 83d section of the statute.

Olcott
v.
Morey.

- Verdict of the Jury affirmed.